Case No. 3-18-0423, Marion Marion, appellant by Ernest Rosiello v. Governor's State University and Board of Trustees, trustees, athletes by Laurel Wonder. Thank you. Good morning. Good morning. May it please the court. This is a retaliatory discharge case arising under the relatively recent whistleblower protection provision of the Illinois Public Officials and Employees Ethics Act. The plaintiff in this case was a full professor of early childhood education at Governor's State University who was discharged from her position for reporting another faculty member in her department for working three jobs outside her full-time duties as a professor in violation of Section 4 of the Collective Bargaining Agreement between Governor's State University and in violation of the University Professors Research and Consulting Act, which is a state law. So it's really the state law, not the contract. Exactly. It's what you're trying to say. Exactly. That is the bottom line in this case. There is no issue over the plaintiff's work performance. The trial court granted summary judgment to the university solely on grounds that the plaintiff did not engage in protected activity because she couched her complaints in terms of union contract and not in terms of the state statute. The trial court's finding is clearly erroneous because a cursory review, a mere cursory review of Article 4 of the Collective Bargaining Agreement and the statute 110ILCS100, the University Faculty Research and Consulting Act, is substantially the same thing. In fact, what she complained about in the union contract is more specific than the statute. The statute is a general proscription forbidding faculty members from moonlighting without authorization from the school. The statute does not provide the protocol or the procedure to implement that proscription, but the union contract does, which I'll get into in a moment. The legal principle governing this case is... How can the union contract provide a protocol for the administration of a state university? Well, that's a good question. It does. If you look at the statute, the statute is very general. It merely says... The statute is general, but it doesn't... What's your argument that a union contract with a state university, okay, which is what the contract is, sets the protocol under legislative enactment? Well, it simply does. The statute just says that no faculty member shall work outside their full-time duties without prior approval of the university president or his designee with an estimate of the time worked outside the school, and he annually submits a statement of the actual time spent. That's all the statute says. I don't understand that, but wouldn't it be logical that that statute governs university employees in their relationship with the university administration? Yes, it does. Okay. Yes, it does. What did the university administration ever do to provide a protocol? Well, I guess what they did was agree to, in the collective bargaining agreement, to these provisions. The collective bargaining agreement describes what outside work is. It also describes how the faculty member is to apply for permission to work outside by filing this form 100 in advance, signed by the dean, the department head, and the president. And the provost, the president, or his designee, and also signed by the faculty member. All this is right in the collective bargaining agreement, which is much more specific than the statute itself. It also states in the collective bargaining agreement that the teacher is not to work more than 30 percent of his time outside school or one-and-a-half days a week. Now, all those details are not contained in the statute. So what the plaintiffs complained of was clearly protected activity because the collective bargaining agreement is significantly more specific than the State statute, which is the general prescription. So the contention here is that the trial court misapprehended the record, misapprehended the facts. In our second amended complaint, we pleaded not only the collective bargaining agreement, but we also pleaded the University Faculty Research and Consulting Act as having been violated. The legal principle involved in this case is Section 15-10 of the Ethics Act, which states that an employee only need reasonably believe in good faith that what she was reporting was a violation of a law, rule, or regulation. That means what she's reporting doesn't even have to be illegal, the underlying, you know, the underlying tort. She must only reasonably believe. And here, there's no evidence that she did not reasonably believe that what she was reporting. The concept of reasonable belief that a law was being violated is explained very well in three cases that we cite in our brief. Wynn v. Illinois Department of Human Services, which is two years ago, First District. There's a Federal case I cite, Saperstein v. Hager, which is right on point. The plaintiff does not have to give the exact statutory citation of what she's complaining about, which is what the trial court and the defendant would have liked in this case. And also there's another case, Michael v. Precision Alliance, holding that the courts look to the intent of the plaintiff and the motive of the employer in the discharge. The interest of the plaintiff to blow the whistle is a critical point to consider when these cases are decided. Now, in this case, Governor State University, about a year earlier, was found guilty by the Illinois Auditor General for not enforcing this law, this University Faculty Research and Consulting Act. There's a report in there they found them lax. And GSU, Governor State, agreed to that. The plaintiff comes along about a year later, and all of a sudden she's a troublemaker. She's rummaging in their nose. They've already been found guilty for not enforcing this state law. And to sweep this under the rug and to silence the plaintiff, they terminate her. Now, the specific issue to be decided in this appeal is did the trial court mistakenly enter summary judgment when it misapprehended that the plaintiff's good faith complaints about her co-worker working three outside jobs. She was running a daycare center in Chicago. She had a consulting business with slow learners. And she also had a part-time teaching job at another institution. Three jobs. She had no authorization to work all those outside jobs. The plaintiff is a PhD, a very experienced early childhood education teacher, who noticed something was wrong. When she did show up, she was unprepared. She was reading from the textbook instead of teaching. There's a lot of other issues. She misrepresented her credentials, but we can't even consider that because that probably is not protected. But the plaintiff definitely complained about a violation of the University Faculty Research and Consulting Act, but did not cite the statute in her complaints. So getting back to what I was saying, the specific issue to be decided in this appeal is whether the trial court mistakenly entered summary judgment when it misapprehended that the plaintiff's good faith complaints about her co-worker working three outside jobs in violation of the collective bargaining agreement was simultaneously also a violation of a state law. The University Faculty Research and Consulting Act, such as to protect her under the Ethics Act. And the answer to this question is a resounding yes, and a reversal is certainly warranted in this case. A comparison of the union agreement and the state statute makes it very clear that they are one and the same thing, except the union agreement is much more specific. The union agreement, Article 4, is called Commitment to the University Conflict of Interest and Conflict of Commitment. The union contract first states that the purpose of the prescription of not working outside jobs is to avoid conflicts of interest and distraction from full-time duties, which is precisely what the plaintiff complained about. Secondly, the union agreement defines secondary employment. The state statute doesn't do that. The state statute is just very, very general, very broad. Number three, the union agreement specifies that a faculty member shall not work more than 30 percent of his time or one and a half days a week outside full-time duties in Governor's State without authorization. It specifies that the authorization is to be submitted on a Form 100. You'll see Form 100 in our appendix, pages 30 to 31. That is a document that's supposed to be submitted twice a year. And it's signed by the professor asking to work outside jobs. It's signed by the dean. It's signed by the chair head. And it's also signed by the president or the provost or his or her designee. During discovery, Governor's State University or the complained of professor could not produce one single Form 100 to show that she had authorization to work those outside jobs. So there was certainly a very high motivation to discharge the plaintiff and to silence her. During their depositions, the dean, the president, and the department chair were all very evasive about who's responsible for enforcing Form 100. They were passing the buck, and in fact, even the president of the university said, I really — it's not my purview. I don't even know what Form 100 is, or something to that effect. I mean, it was a — it's a total joke. Now, the defendant in this case glosses over plaintiff's complaints, and in their brief, they just focus in on all this disruptive behavior, whatever that means. Well, that was a question of fact. The question of fact in this case is, was the plaintiff fired for protective activity? In other words, complaining about ethical violations? Or was she fired because, as Governor's State says, she was guilty of disruptive behavior? That's a question of fact. The cases are legion. We cite four cases which explain this concept very, very well. Actually, one of them is from this district, Palmatier v. International Harvester, which is probably the paradigm retaliatory discharge case in this state. Two minutes. Thank you. I can tell you I've read the briefs. I just would like to say, in conclusion, that the trial court's summary judgment in this case is plainly unjust and erroneous as a matter of law. It punishes the plaintiff for not knowing the precise statutory citation in her disclosure to Governor's State University administration that there were ethics violations. And, by the way, every state employee is required to take ethics violations, and they're required to report suspicions. The purpose of the Act is not to punish the employee or to reward the employer who discharges the plaintiff unjustly. The Ethics Act also requires only a reasonable belief that what is reported is a violation of a law, rule, or regulation. To adopt the trial court's rationale would be to reward the employer and punish the unwitting employee who did not give the precise statutory citation. As I stated, the statute is a general prescription, while the union contract is much more specific regarding the same identical topic. The trial court made a clearly erroneous finding that what the plaintiff complained of did not relate to a law when, in fact, it did. There's also a genuine issue of material fact over the real reason or motive for the discharge. Was it because of the complaints about the coworker, or was it because of disruptive behavior? The trial court never explained that, except that everything that the Attorney General said is gospel truth. The case should be reversed. The judgment should be reversed. Thank you. Thank you, Mr. Rossielli. Rossiello, excuse me. Ms. Wonder. No, I'm sorry. I just mispronounced your name. I'm sorry. Good morning. Good morning. Before turning to the merits, I'd just like to quickly mention that there's an ancillary issue regarding the fact statement in the opening brief, and I put in my brief that that statement does not comply with Illinois Supreme Court Rule 341. And, of course, that's something for the Court to review and assess and determine if some type of sanction is warranted, and I'm not going to belabor that here today. But I will say that I think the Court's review will show that the departures from the rule are substantial. There's a lot of argument. There's a lot of instances of mischaracterizing the record or incorrectness. And what's the remedy for that? What is the remedy? Well, this Court has the discretion. Pardon me? Yeah, this Court has the discretion to dismiss the appeal or to strike the fact statement or, at a minimum, to not consider that factual statement. As I say, I think that there are substantial deviations from what the rule requires that go beyond minor deviations. I mean, lawyers are advocates after all. And so I'm suggesting to the Court that some type of sanction would be warranted here. This goes into more detail. I go into this in more detail in my brief, but this statement is... Well, why don't we get to the real case here? Pardon me? Yes. So turning to the merits, the Court's grant of summary judgment here was correct and should be affirmed. This was not erroneous. There was nothing unjust about it. It didn't depend on not knowing a statutory citation. There were two threshold requirements for an Ethics Act violation that it was the plaintiff's burden to show. And there was no evidence in the record that could support a conclusion that either of those had been met. And, you know, plaintiff relies on, you know, generalities and general principles. But at the end of the day, within the summary judgment framework, she still needed to show sufficient evidence that was not speculative, not conjecture, and that was tied to this record. She gets inferences, but they have to be reasonable and they have to be supported by evidence in the record. So that's really what's missing here when we look at this actual record. What is it that she said? What happened? When? With the involvement of who? When we really parse that out, and this is done in more detail in the brief, neither of those two elements is met. And the plaintiff here was talking about this first element, the idea that the plaintiff had to be her disclosures that she's relying on as a purportedly protected activity had to be disclosing what she reasonably believed to be a violation of the law, rule, or regulation. And that's where we have this dispute coming in where she says, well, she's characterizing the complaints as complaining of a violation of the Consulting Act. And by her own account, though, what she says is she was asked, you know, what laws, rules, or regulations did she think that this Professor Giles had violated? And she answers that she was concerned only that the professor was violating the collective bargaining agreement between the union and the university because, in her view, the professor seemed to be working more hours than would be allowed by the union contract to the detriment of her university employment. And counsel's theory is, well, that's a complaint about this Consulting Act statute that she wasn't complying with the Consulting Act. But if we look at those, her internal complaint, which is really one remark that she made, and then the later Inspector General complaints, she's not complaining. She's just simply not complaining about any violations of this Consulting Act statute. Certainly there's no mention of that statute anywhere, but it goes beyond that. If you look at her complaint, she's not complaining about the subject matter of that statute. That statute doesn't place any limits on the amount of outside work that a faculty member can undertake. It provides for certain procedures for the faculty member, and this is only for research and consulting work, to get this preapproval. And then they also have to later fill out a different form about how much they did work. And she's not complaining that the proper paperwork wasn't filled out or there wasn't preapproval. Her complaint was, I think my colleague is doing too much outside work and it's interfering with her job, and that's a very different issue. So you're saying none of this activity she was complaining about of her colleague was properly classified as research or consulting? Well, certainly her teaching job at Ellis University didn't have anything to do with research and consulting, so that wouldn't even bring into play the state statute. Possibly she was doing some developmental therapy work, and perhaps that would have been consulting work. She was running a business, right? She was running a business as a sole proprietorship, but within that she did do a modest amount of consulting work. And counsels also said that there was three jobs. I believe he's referring to she had an ownership interest in a child care center, but that doesn't have anything to do with her working in that capacity or spending any time on that. And Plankett's complaints was really about the, we're talking about two jobs, the Ellis teaching and the developmental therapy work, which pertained to the business that she was running as a sole proprietor. So you're suggesting that the activity in that business could be characterized as consulting? In which business? Could it be characterized as consulting? The developmental therapy work? Perhaps it could. Well, then it's within the scope, isn't it? It may be within the scope of the Faculty Research and Consulting Act, but what I'm suggesting is that her complaints were not about that. That statute pertains to a preapproval process. She wasn't complaining here that the professor didn't go through the preapproval. She was saying, I think my colleague is working too many hours beyond what's allowed by the collective bargaining agreement. Her complaints had nothing to do with the state law. They don't refer to the state law. There's no evidence that she was considering state law, that she reasonably believed there'd be a violation of state law. She was focused on more hours being worked, too many hours in violation of the collective bargaining agreement. They had nothing to do with the preapproval process that the recordkeeping and paperwork requirements of the state statute. So she doesn't have the protection of the Act? She doesn't have the protection. She has to be complaining of what she reasonably believes to be a violation of state law. When you review her complaints, that's not what she was doing. She wasn't complaining about the Consulting Act, and that's why she can't meet the first element. Did she complain that her colleague was being paid for this consulting work? Yes. She complained that the colleague is receiving money for all these outside hours, and that's to the detriment of her university employment. The public policy behind the Whistleblower's Act, or the Public Officials and Employee Ethics Act, is simply to protect somebody who brings information to that public body that should trigger an investigation. Is there a requirement for the format of that information? Well, I think we need to go back to what the two elements are. My question is, is there a requirement for the format of the whistleblower's complaint? There's not a format for the type of complaints that she has to make, but what she does have to do is, for it to be protected activity, she has to be complaining about what she reasonably believed is a violation of a law, rule, or regulation. And what she points to to say, I've satisfied that, is she says, well, I was complaining about the violation of state law, this Consulting Act. And when you go back and look at her complaints, they do not bear out that assertion. That's not the substance of her complaints. The substance of the complaint that she was consulting and being paid would constitute a violation of the Consulting Act. No, no, because the Consulting Act is about preapproval. It doesn't have anything to do, you can consult, you can get paid. The Act isn't about how much work you do or when you do it. I understand that, but my reading of the Act is that it prohibits consulting by a state-paid employee at a university setting. It prohibits that. And then there's an affirmative defense built in that I think becomes the responsibility of the teacher to show that he or she has prior written approval to do so. So to me, reading the statute, the only thing that has to be reported is somebody is consulting and being paid as a state professor and is also getting paid as a consultant. But could you address my reading of the statute and tell me why I'm wrong that it's the teacher who's consulting for payment that has to show there was a permit? The statute, the Consulting Act, puts in place a requirement that faculty members submit or receive prior approval for outside consulting work. So that statute is geared towards the receiving of the approval. And it doesn't prohibit anything about the substance or what can be done. It's just an approval process. Yeah, and we're just going to have to agree to disagree because I'm focusing on the language. No full-time member of the faculty of any state-supported institution of higher learning may undertake, contract for, or accept anything of value in return for research or consulting services. That's prohibited. And then there's a paragraph, unless. So I think the whistleblower triggers the investigation by saying she's getting paid for consulting work. And she's also getting paid by the state, by the taxpayers, to teach. And there, maybe I would leave it at just reviewing what the actual complaints were, her internal remark in the OIG complaints, and whether that can be reasonably construed as alleging a violation of the state law. And I would say that when you go and look at what they say, it cannot. Probably not explain what her complaint actually was. That you're saying does not, you know, go to the act. Her complaint was that my colleague is working more hours. She's doing too much work, and that's not permitted by the collective bargaining agreement. So her complaint went to the number of hours that were worked. It didn't say, she didn't go fill out the proper form first. It had nothing to do with that. It's just, I think she's working too many hours. If I might quickly also address that. At the school? Too many hours outside hours. She's working too many outside hours. It didn't have anything to do with, they weren't approved. She's just saying she worked too much. Two minutes, please. But there are two factors here. There are two elements here. The additional factor that has to be shown, even if these complaints constitute a protected activity, she also has to show that she was improperly retaliated against, that her discharge, a contributing factor in her discharge was her protected activity. And there is no evidence in the record that can support that. And I am running out of time here, but it's set forth in great detail in the brief why that is so. Whose obligation is it to show that? It is the plaintiff's obligation to show, plaintiff's burden to show that her discharge was a contributing, excuse me, that retaliation for her disclosures about these outside jobs was a contributing factor in her discharge, and that is what is missing completely from the record. And all of the evidence showed that the discharge was about her unprofessional conduct that came to a head with the CTAT evaluation, and then her suspension of discharge followed from that, from those health and safety concerns. And she says, well, I have this counter-narrative. It was because of this audit finding. And again, this is discussed in more detail in the brief. What was the audit finding? The audit finding was the audit finding, which was one of many audit findings, was that the university, there were instances found of noncompliance with these record-keeping procedures of the Consulting Act. And that's not tied to the fact that that's not tied to her discharge in any way. As I've said, she wasn't complaining about the Consulting Act, and we've talked about that, but there are other problems, which is that there's no evidence that her supervisors even knew about this audit finding. That's certainly true for the division chair or the dean. There would be no reason why they would know that. The president, perhaps you could impute that, but still there's nothing of the record that they would have any idea of the audit finding. And then for the division chair and the dean, there's no evidence that they had anything to do with the decision to suspend or discharge her. And then beyond that, there's no evidence that the audit could reasonably provide any retaliatory motive. It had to be tied to the record. There had to be something that would show that they were concerned about the audit finding or, you know, they were concerned with some future potential deviation, something that ties it up, but there's nothing there. There was some speculation, maybe this could get someone in trouble, or maybe this could, you know, be a loss of funds, but it had to be tied to something in the record that there would be some concern about this, and that's what's completely missing. And so for those reasons, there's a more detailed discussion of what is missing to tie this up so that she would meet her burden, but both those elements are not met. Did she ever say that she was relying on anything other than the collective bargaining agreement? No, she did not. That is what she has expressly said, and she was asked and said, no, I was concerned about more hours outside the collective bargaining agreement. And so your opposing counsel is saying collective bargaining agreement and the statute are one and the same? And actually, I would like to answer that. Your time is up. Okay. They are not. It is not the case that the collective bargaining agreement somehow implements the state statute. The collective bargaining agreement does provide some approval procedures as well, but it's not implementing the state statute. It's not implementing the Consulting Act. And I said the Consulting Act doesn't have anything to do with teaching. It's research or consulting. The collective bargaining agreement has its own procedures and also some limits on how many hours can be worked, which was, as I say, the focus of her complaint. And with that, I believe I'm out of time, so I will conclude. And we believe that the summary judgment was proper and should be affirmed. Thank you. Thank you, Ms. Lunder. Mr. Rossi, I'll let you go. Thank you. Very briefly, to answer Justice Breyer's questions, pages 13 and 14 in our brief would answer the questions you asked, counsel. Next, the sole reason, the sole reason summary judgment was entered here was that plaintiff did not engage in protective activity, which we think is clearly erroneous. Number two, plaintiff actually proved that the coworker had taken in over $170,000 in outside income from the State of Illinois as a sole proprietor in her two businesses. She ran the daycare center. She had a consulting business with slow learners, and she had a part-time job teaching. And also, specifically, on June 6, 2011, at 10.50 a.m., in person, the plaintiff was in her department chair's office with the human resources director, and she told her, Giles is working extra jobs outside school. You've got to do something about it. Thank you. Thank you, Mr. Rossi. We thank both of you for your arguments this morning. We'll take the matter under advisement, and we'll issue a written decision as quickly as possible.